UNITED STATES of America, Appellee,

v.

Richard DELVECCHIO and Angelo
Amen, Defendants-Appellants.

Nos. 470, 471, Dockets 86–1339, 86–1340.

United States Court of Appeals,
Second Circuit.

Argued Nov. 25, 1986.

Decided April 20, 1987.

Catherine Gallo, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Bruce A. Green, Asst. U.S. Atty., New York City, of counsel), for appellee.

Phylis S. Bamberger, The Legal Aid Soc., Federal Defender Services Unit, New York City (Thomas M. O'Brien, New York City, of counsel), for defendant-appellant Delvecchio.

Daniel M. Felber, New York City (Andrew Farber, Law Student, on the brief), for defendant-appellant Amen.

Before MANSFIELD *, PRATT and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Appellants Richard Delvecchio and Angelo Amen were charged in a two count indictment with conspiracy to possess with intent to distribute and to distribute heroin (Count One); and with attempt to possess heroin with intent to distribute (Count Two), in violation of 21 U.S.C. § 846. After a five day jury trial in the United States District Court for the Southern District of New York before Judge David N. Edelstein, both defendants were found guilty on both counts of the indictment. Appellant Delvecchio was sentenced to two six-year terms of imprisonment, to be served concurrently. Appellant Amen was sentenced to two nine-year terms of imprisonment, also to be served concurrently.

We find that the evidence presented at trial was insufficient as a matter of law to sustain the submission of the "attempt" count to the jury. Therefore we reverse both appellants' convictions and vacate their sentences on Count Two of the indictment, and direct that Count Two be dismissed. We affirm appellants' convictions on Count One, because we conclude that appellants' other claims of error do not justify granting a new trial on the conspiracy count.

## BACKGROUND

This appeal arises out of the Drug Enforcement Administration's ("DEA") investigation and infiltration of a heroin conspiracy which allegedly was run by an individual named Oreste Abbamonte, Jr., appellant Amen's cousin. The conspiracy was alleged to have taken place between April 1982 and July 1983. DEA Special Agent Gerald Franciosa was the government's principal witness at trial.

Franciosa testified that on November 3, 1982, nine kilograms of heroin were seized from Abbamonte and Joseph Delvecchio (the brother of appellant Richard Delvecchio); the two men were subsequently incarcerated. Abbamonte frequently was visited in jail by his cousin, Angelo Amen; Joseph Delvecchio was visited frequently by his brother Richard. On several occasions in April and May of 1983, Angelo Amen and Richard Delvecchio visited Abbamonte together.

Around April 1983, Lorenzo DiChiara, another member of the alleged conspiracy, was released from jail and began to cooperate with the DEA. Shortly after his release, DiChiara received flowers at his home on three occasions. The first bunch contained a note saying, "I miss you. Please call every day. It is important to keep in touch. My love, your friend." The second note read, "Miss you, please call. All my love, your friend." The third note

---

* Judge Mansfield participated in oral argument in this case and voted before his death on January 7, 1987 in favor of the disposition reached in this opinion.

stated, "My friend, how are you? Hope everything is fine. Call me. Your friend." A handwriting expert testified at trial that the third note was in appellant Delvecchio's handwriting.

Agent Franciosa asked DiChiara to set up a meeting with Delvecchio and Amen for the purpose of initiating a possible drug transaction. In early May 1983, DiChiara told Franciosa that he intended to meet with appellants on May 11. Franciosa conducted surveillance of this May 11 meeting. He testified that he observed first DiChiara's car and then a blue Corvette arrive at the meeting site. Appellant Amen was identified as the driver of the Corvette. Amen got out of the car and walked over to DiChiara who was already standing on the sidewalk. A passenger remained in the Corvette, but Franciosa could not see who this passenger was. Amen and DiChiara spoke for about ten minutes; Franciosa did not overhear their conversation.

Following the May 11 meeting, Agent Franciosa developed a plan to sell heroin to Delvecchio and Amen. On the evening of May 17, 1983, Franciosa, DiChiara, and both appellants met at the Old Homestead Restaurant in Manhattan. Franciosa posed as the nephew of a man who had previously supplied heroin to the "Abbamonte organization." By the end of this meeting, Amen and Delvecchio had agreed to purchase five kilograms of heroin from Franciosa and DiChiara at 10:00 p.m. the following evening. The purchase price was to be $195,000 per kilogram to be paid upon receipt of the heroin, and the transaction was to take place at a designated street corner in Manhattan. Amen gave his beeper number to DiChiara and Delvecchio gave his to Franciosa.

The proposed transaction was, however, never consummated. On May 18, 1983, Franciosa and DiChiara arrived at the agreed upon meeting place, accompanied by a large number of agents acting as back up or surveillance personnel. One of these agents had five kilograms of heroin in the trunk of his vehicle.

Franciosa and DiChiara waited about twenty minutes, but appellants did not appear. Franciosa then called the beeper number which Delvecchio had given him and left the number of the phone booth from which he had placed the call. A short time later Delvecchio called back. When asked why he had not shown up, Delvecchio told Franciosa that he was "not comfortable." Amen then got on the line and said that if Franciosa wanted to stay "healthy," he should leave the area. Amen then hung up, and Franciosa had no further contact with either appellant.

## DISCUSSION

### I. *Sufficiency of the Evidence on the Attempt Counts*

Both appellants contend that the evidence presented at trial was insufficient as a matter of law to sustain their attempt convictions, and therefore the judge should not have submitted Count Two of the indictment to the jury. In *United States v. Martinez*, 775 F.2d 31 (2d Cir.1985), we reiterated this circuit's definition of attempt liability:

> A person is guilty of an attempt to commit a crime if he or she (1) had the intent to commit the crime, and (2) engaged in conduct amounting to a "substantial step" towards the commission of the crime.... "[A] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime...."

*Id.* at 35 (citations omitted). Appellants concede that the evidence was sufficient to enable a jury to find the element of intent; they assert, however, that the evidence was insufficient with respect to the "substantial step."

Although the verbal formula for what constitutes a substantial step is clear, courts have not always found it easy to decide whether a defendant's conduct has crossed over the line from "preparation" to "attempt." *See, e.g., United States v. Ivic*, 700 F.2d 51, 66 (2d Cir.1983) ("[T]his is a classic example of a legal doctrine where although the principle is clear, its application is fraught with difficulty."); *United*

*States v. Manley*, 632 F.2d 978, 988 (2d Cir.1980) ("Whether conduct represents a substantial step towards the fulfillment of a criminal design is a determination so dependent on the particular factual context of each case that, of necessity, there can be no litmus test to guide the reviewing courts."), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

In *Manley, id.* at 989, this court affirmed a conviction for attempt to possess cocaine where the defendant was arrested with a large amount of cash in his possession at the home of an alleged narcotics dealer. Furthermore, Manley had been seen running from a room where cocaine was being measured and weighed, and the cash in his possession was approximately equal to the wholesale price of a quantity of cocaine which was found sitting on a scale. *Id.*

In a case from the Fifth Circuit, *United States v. Mandujano*, 499 F.2d 370 (1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975), the court affirmed defendant's conviction for attempt to distribute heroin, where defendant had accepted $650 in cash from an undercover agent to purchase an ounce of heroin for the agent, but had been unable to find a supplier.

After reviewing the facts of these and other cases where courts have grappled with the issue of what constitutes a "substantial step," *e.g., Martinez*, 775 F.2d 31; *Ivic*, 700 F.2d 51, we agree with appellants that the evidence in their case was insufficient to sustain their convictions for attempt to possess heroin.

■ Viewing the evidence in the light most favorable to the government, *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Esdaille*, 769 F.2d 104, 108 (2d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985), the proof at best established that appellants sought out DiChiara, a supplier of narcotics; attempted to contact DiChiara by sending him flowers; met with DiChiara on May 11 and May 17, 1983; and agreed on the price for five kilograms of heroin, the terms of payment, and the date and time of the proposed transaction.

The government failed to establish, however, that appellants performed any overt act to carry out the agreed upon purchase. *See Manley*, 632 F.2d at 988 ("It is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime." quoting *United States v. Monholland*, 607 F.2d 1311, 1318 (10th Cir.1979)).

Count Two of the indictment charged appellants with attempt to possess heroin on *May 17*, because they had failed to appear at the scheduled May 18 meeting. The only evidence of appellants' actions on May 18 consisted of their returning Agent Franciosa's telephone call. There was no evidence that appellants had set out for the meeting site but turned back; nor was there any evidence that they had either acquired or attempted to acquire the almost one million dollars necessary to complete the purchase.

On May 17, appellants' plan to possess heroin had only advanced to the stage of meeting with their purported suppliers to work out the terms of the deal. We hold that evidence of a verbal agreement alone, without more, is insufficient as a matter of law to support an attempt conviction. Therefore, Count Two of the indictment should not have been submitted to the jury. Accordingly, we reverse appellants' attempt convictions and direct that Count Two be dismissed.

## II. *Other Evidentiary Challenges*

### A. *Hearsay evidence admitted against Delvecchio*

Appellant Delvecchio argues that the admission of certain evidence against him was improper and claims that he was thereby denied a fair trial. The evidence he challenges is the out-of-court statement of the informant, DiChiara, that DiChiara intended to meet with Amen and Delvecchio on May 11, 1983. This statement was admitted against Delvecchio on the theory that it tended to prove his attendance at

the May 11 meeting. When agent Franciosa testified about his surveillance of that meeting, however, he admitted that although he saw another person in the car with Amen, he could not tell if that person was Delvecchio.

■ A declarant's out-of-court statement of intent may be introduced to prove that the declarant acted in accordance with that intent. *See Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); Fed.R.Evid. 803(3). A declarant's statement of intent may also be admitted against a non-declarant when there is independent evidence which connects the declarant's statement with the non-declarant's activities. *See United States v. Badalamenti,* 794 F.2d 821, 825–26 (2d Cir.1986); *United States v. Sperling,* 726 F.2d 69, 73–74 (2d Cir.), *cert. denied,* 467 U.S. 1243, 104 S.Ct. 3516, 82 L.Ed.2d 824 (1984); *United States v. Cicale,* 691 F.2d 95, 103–04 (2d Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983). For example, an informant's out-of-court statement of intent to meet with a defendant may be admitted against the defendant when there is independent evidence that the meeting took place.

■ The government argues that informant DiChiara's statement of intent to meet with Delvecchio was admissible against Delvecchio under the *Cicale* doctrine. The government's argument fails, however, because in this case there was no independent evidence of Delvecchio's presence at the May 11 meeting. Indeed, Agent Franciosa specifically testified that he did not see Delvecchio at the meeting site. The government offered no other evidence of Delvecchio's movements on that day. By contrast, in both *Sperling* and *Cicale,* the declarant's statement of intent to meet with the defendant was confirmed by later eyewitness testimony that the meeting actually took place. DiChiara's statement should not, therefore, have been admitted against Delvecchio.

**B.** *Testimony of Amen's former fiancee*

Appellant Amen's former fiancee, Maria Brown Plominski, testified against him at trial, and Amen now contends that her testimony consisted of irrelevant and prejudicial material, the admission of which deprived him of a fair trial. Specifically, Ms. Plominski testified that in late 1981, Amen began taking her out frequently to expensive dinners which cost approximately $100 each. At around the same time, she testified, Amen purchased a blue Corvette with $6,500 in cash that he carried in a paper bag. The Corvette was subsequently registered in Plominski's name, although she only drove it once a week.

■ A trial court has "broad discretion in ruling on the admissibility of relevant evidence." *United States v. Carson,* 702 F.2d 351, 368 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983). *See* Fed.R.Evid. 403. We conclude that the district court was within its discretion in admitting evidence of Amen's ownership of the blue Corvette. Agent Franciosa had testified that Amen drove this particular Corvette to the May 11 meeting with DiChiara; thus, evidence that Amen indeed owned the car further tended to prove his presence at that meeting. Although the testimony concerning Amen's possession of a bag full of cash which he used to purchase the car was somewhat gratuitous, the court did not abuse its discretion by admitting Ms. Plominski's testimony about the car.

■ We reach the opposite conclusion with respect to Ms. Plominski's testimony about the expensive dinners. The government contends that this evidence of Amen's "unexplained wealth" was relevant to prove Amen's "illegal dealings" relating to the conspiracy. As a general proposition, pre-conspiracy conversations or transactions may be introduced if they are relevant to demonstrate the beginning of a defendant's involvement in the conspiracy charged. *See United States v. Del Purgatorio,* 411 F.2d 84, 86–87 (2d Cir.1969). Evidence of unexplained wealth may also be introduced if it is probative of a defend-

ant's illegal dealings. *See United States v. Cruz,* 797 F.2d 90, 95–96 (2d Cir.1986).

 In the present case, however, the dinners about which Ms. Plominski testified took place several months before Amen's participation in the conspiracy was alleged to have begun. These particular expenditures therefore shed no light on Amen's involvement in the conspiracy, and evidence of the lavish dinners should have been excluded as irrelevant and prejudicial.

### C. *Appellants were not denied a fair trial*

Despite the erroneous admission of evidence against each appellant, we nevertheless affirm their convictions on the conspiracy count. In light of the compelling evidence of appellants' guilt on that count, we conclude that the errors were harmless and did not deprive appellants of a fair trial. *See* Fed.R.Crim.P. 52(a).

 Appellants have not challenged the sufficiency of the evidence of conspiracy, nor could such a challenge have succeeded. The central element of conspiracy is an "agreement of two or more persons to commit a criminal act or acts." *United States v. Cepeda,* 768 F.2d 1515, 1516 (2d Cir. 1985). A conspiracy under 21 U.S.C. § 846 requires "an agreement by two or more persons to violate the drug laws." *United States v. Rodriguez,* 765 F.2d 1546, 1551 (11th Cir.1985). In contrast to the general conspiracy statute, 18 U.S.C. § 371, which requires the performance of an overt act, no overt act need be alleged or proven as a necessary element of a conspiracy under 21 U.S.C. § 846. *See United States v. Bermudez,* 526 F.2d 89, 94 (2d Cir.1975) ("the conspiracy to distribute narcotics is in and of itself a specific crime"), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976).

 The admissible evidence in the present case was more than sufficient for a jury to find that Delvecchio and Amen had conspired to possess heroin with the intent to distribute. The evidence showed that both Delvecchio and Amen visited the alleged head of a narcotics operation in jail

and attempted to contact another member of the operation, DiChiara, upon his release from prison. Amen was seen meeting with DiChiara on May 11, 1983. Finally and most importantly, both Delvecchio and Amen participated in the May 17 meeting with DiChiara and Agent Franciosa, where they agreed to most of the material terms of a major heroin transaction to take place the following evening.

"[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). Because the admissible evidence of appellants' participation in the conspiracy was so strong, we hold that the improper admission of the DiChiara and Plominski statements constituted harmless error.

### CONCLUSION

We affirm appellants' conspiracy convictions. We reverse appellants' attempt convictions, vacate their sentences on Count Two of the indictment and direct that Count Two be dismissed.